258 January 2, 2025 No. 8

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

In the Matter of N. G.,
a Person Alleged to have Mental Illness.
STATE OF OREGON,
*Respondent,*

*v.*

N. G.,
*Appellant.*

Multnomah County Circuit Court
23CC05666; A182397

Michael J. Riedel, Judge pro tempore.

Submitted November 18, 2024.

Joseph R. DeBin and Multnomah Defenders, Inc., filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Jona J. Maukonen, Assistant Attorney General, filed the brief for respondent.

Before Hellman, Presiding Judge, Lagesen, Chief Judge, and Mooney, Senior Judge.

HELLMAN, P. J.

Affirmed.

**HELLMAN, P. J.**

Appellant appeals a judgment committing her to the Oregon Health Authority (OHA) for up to 180 days. Appellant raises two assignments of error, arguing that the trial court erred when it found that she was a person with mental illness under ORS 426.005 and that it plainly erred when it failed to dismiss the case after medical staff and the trial court violated ORS chapter 426. Because we conclude that the evidence supports the court's findings that appellant was a danger to herself and that she could not care for her basic needs, the court did not err when it found that appellant was a person with mental illness. We further conclude that the trial court did not plainly err when it proceeded with appellant's civil commitment hearing. Accordingly, we affirm.

Appellant does not request *de novo* review and we decline to exercise our discretion to conduct such review. ORAP 5.40(8)(c) (providing that *de novo* review is appropriate "only in exceptional cases"). Thus, "we review whether the state presented sufficient evidence to support appellant's civil commitment for legal error, and we view the evidence in the light most favorable to the trial court's decision." *State v. C. W.*, 333 Or App 400, 402, 553 P3d 577 (2024).

Appellant was detained at Unity Hospital after police found her sitting on the side of Interstate 5 at 3:00 a.m. At the commitment hearing, the trial court found that appellant suffered from a mental health disorder, that appellant would not take her blood pressure medication because of that mental health disorder, and that, without the medication, appellant "would suffer significant and severe physical injury, including a heart attack and/or stroke." As a consequence, the court found that appellant posed a danger to herself and could not provide for her basic needs and committed appellant to OHA. This appeal followed.

In her first assignment of error, appellant argues that the trial court erred in finding that "due to a mental disorder appellant was a danger to self" under ORS 426.005 (1)(f)(A) or that she "met the basic needs criteria for mental illness" under ORS 426.005(1)(f)(B).[1]

---

[1] "Person with mental illness means a person who, because of a mental disorder," is "[d]angerous to self or others" or is "[u]nable to provide for basic personal

We conclude that the trial court did not err. To satisfy ORS 426.005(1)(f)(A), the state was required to present evidence that appellant's "mental disorder would cause *** her to engage in behavior that is likely to result in physical harm to *** herself in the near term." *State v. B. B.*, 240 Or App 75, 82, 245 P3d 697 (2010) (internal quotation marks omitted). To satisfy ORS 426.005(1)(f)(b), the state was required to establish that appellant was "unable to provide for *** her basic personal needs in a way that leaves [appellant] at nonspeculative risk of 'serious physical harm'—meaning that [her] safe survival will be compromised—in the near future, even though that risk is not imminent." *State v. M. A. E.*, 299 Or App 231, 240, 448 P3d 656 (2019).

Here, the state presented evidence that appellant had been diagnosed with schizophrenia or schizoaffective disorder and hypertension. When appellant was admitted to the hospital, appellant displayed "thought disorganization" and "delusional thinking" and her blood pressure was "dangerously high." However, appellant denied that she had any mental health diagnoses, refused all oral medications, and believed that she could lower her blood pressure by drinking lemon juice. In addition, appellant's treating psychiatrist testified that appellant's high blood pressure and hypertension created a high risk for a stroke or heart attack, that without medication appellant would suffer negative consequences "right away," and that appellant's mental health disorders prevented her from caring for her blood pressure. Further, appellant's mental health counselor testified that appellant would not take any psychiatric medication if released.

Because the foregoing evidence supports the court's findings that appellant's schizophrenia caused her refusal to take her blood pressure medication and that, without the medication, she posed a high risk for a stroke or heart attack, the court did not err when it found that appellant was a danger to herself and could not care for her basic needs. *See State v. S. S.*, 309 Or App 131, 134-35, 480 P3d

needs that are necessary to avoid serious physical harm in the near future, and is not receiving such care as is necessary to avoid such harm." ORS 426.005 (1)(f)(A), (B).

321 (2021) (affirming an order of commitment because the evidence of "the persistence and consistency of [the] appellant's actions" demonstrated "a risk of serious physical harm and that the risk is likely to recur" and allowed a rational factfinder to determine that the appellant was a danger to himself); *C. W.*, 333 Or App at 402, 405-06 (concluding that the record supported the trial court's finding that the appellant could not care for her basic needs because she did not recognize that she had schizophrenia, she refused to take her medications—exposing her to "significant GI bleeding and severe anemia"—and that conduct "put her at a non-speculative risk of serious physical harm that would compromise [the] appellant's safe survival" (internal quotation marks omitted)).

Appellant acknowledges that her second assignment of error is unpreserved. "Generally, an issue not preserved in the trial court will not be considered on appeal." *State v. Wyatt*, 331 Or 335, 341, 15 P3d 22 (2000). However, we may review an unpreserved error if it is "plain error." *State v. Vanornum*, 354 Or 614, 629, 317 P3d 889 (2013). A plain error is "an error of law, obvious and not reasonably in dispute, and apparent on the record without requiring the court to choose among competing inferences." *Id.* If we conclude that an error is "plain," we must "determine whether to exercise [our] discretion to review the error." *Id.* at 630.

Here, appellant argues that the trial court plainly erred when it "fail[ed] to dismiss the case" after Unity's medical staff and the trial court violated ORS chapter 426 in three respects.

First, appellant contends that the medical staff violated ORS 426.123. ORS 426.123(1) provides, in relevant part, that

> "a person shall be given a warning that observations of the person by the staff of the facility where the person is in custody may be used as evidence in subsequent court proceedings to determine whether the person should be or should continue to be committed as a person with mental illness."

Assuming, without deciding, that the medical staff did not comply with that statute, we conclude that any error is not

plain because "a violation of ORS 426.123 is not grounds to dismiss a commitment proceeding." *State v. R. C.*, 298 Or App 280, 281-82, 443 P3d 742 (2019) ("[I]mplicit in the legislative decision not to require a court to exclude evidence obtained under circumstances in which a person has not been given the warnings required by ORS 426.123 is the principle that the commitment hearing can be held notwithstanding a violation of ORS 426.123[.]").

Second, we understand appellant to argue that the medical staff violated her right to counsel under ORS 426.234(1) because they did not advise her of her "right to appointment of legal counsel with documentation of that warning." ORS 426.234 provides, in relevant part:

"(1)   At the time a person alleged to have a mental illness is admitted to or retained in a hospital or nonhospital facility under ORS 426.232 or 426.233, a licensed independent practitioner, nurse or qualified mental health professional at the hospital or nonhospital facility shall:

"(a)   Inform the person of the person's right to representation by or appointment of counsel as described in ORS 426.100[.]"

We have reviewed the record and conclude that the alleged error is not "apparent on the record without requiring the court to choose among competing inferences." *Vanornum*, 354 Or at 629. Although appellant's treating psychiatrist testified at the commitment hearing, the record lacks evidence that medical staff failed to inform appellant of her right to counsel. Therefore, any error is not plain. *See Ailes v. Portland Meadows, Inc.*, 312 Or 376, 381, 823 P23 956 (1991) (explaining that an error appears "on the face of the record" when "the reviewing court must not need to go outside the record to identify the error").

Third, appellant argues that the trial court violated ORS 426.100(3)(e) because it did not appoint counsel "as soon as reasonably possible" after she was detained. ORS 426.100(3)(e) provides, in relevant part, that, "[i]f the person is being involuntarily detained before a hearing on the issue of commitment, the right *** to contact an attorney or *** to have an attorney appointed may be exercised as soon as reasonably possible." We conclude any error is not plain. *See*

*State v. C. T.*, 333 Or App 718, 720-21, 553 P3d 1070 (2024) ("[A]s a matter of statutory construction, it is not obvious or beyond reasonable dispute that ORS 426.100(3)(e) requires the court to appoint counsel for someone as soon as reasonably possible after an emergency hold starts."). Moreover, although appellant remonstrates that she was "detained on September 12th and counsel was not appointed until the 19th or 18th," appellant offers no argument about "what was 'reasonably possible' here." *Id.* at 721 ("[E]ven if the court's obligation to appoint counsel 'as soon as reasonably possible' is triggered as soon as an emergency hold is placed, the record is silent as to what was 'reasonably possible' here."). The trial court did not plainly err.

Affirmed.